Raymond J. DONOVAN, Secretary of Labor, Plaintiff-Appellant,

v.

ESTATE OF Frank E. FITZSIMMONS, et al., Defendants-Appellees.

David DUTCHAK, et al., Plaintiffs,

Raymond J. Donovan, Secretary of Labor, Intervening Plaintiff-Appellant,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al., Defendants-Appellees.

Chester J. SULLIVAN, et al., Plaintiffs,

Raymond J. Donovan, Secretary of Labor, Intervening Plaintiff-Appellant,

v.

ESTATE OF Frank E. FITZSIMMONS, Defendants-Appellees.

Nos. 84–2827, 84–2863 and 84–2864.

United States Court of Appeals, Seventh Circuit.

Argued April 23, 1985.

Decided Nov. 15, 1985.

Steven J. Mandel, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.

Lawrence Walner, Lawrence Walner & Assoc., Chicago, Ill., Robert J. Higgins, Dickstein, Shapiro & Morin, Washington, D.C., John Tucker, Jenner & Block, Chicago, Ill., for defendants-appellees.

Before BAUER, COFFEY, Circuit Judges, and GRAY, Senior District Judge.*

BAUER, Circuit Judge.

The Secretary of Labor appeals the district court's approval of a comprehensive settlement of actions brought by participants in the Central States Southeast and Southwest Areas Pension Fund (CSPF) alleging that the benefit structure and investment management of the CSPF were illegal and that past investment mismanagement gave rise to a derivative action on behalf of the CSPF against other defendants. We affirm.

## I. FACTS

The Central States Southeast and Southwest Areas Pension Fund is a multi-employer pension trust created in 1955 under the provisions of Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186. As required by that section, the CSPF has an equal number of trustees appointed by labor organizations and by employer organizations. All trustees serve without compensation, and no compensation of trustees by the CSPF is permitted under the statute. Since January 1975 the CSPF has been subject to the requirements of the Employee Retirement Income Security Act (ERISA). 29 U.S.C. ch. 18.

---

* The Honorable William P. Gray, Senior Judge of the United States District Court for the Central District of California, is sitting by designation.

The *Dutchak* complaint, filed in late 1976, was instituted by eleven plaintiffs and contained eight counts alleging that forty-five separate defendants violated various federal and state laws. The complaint alleged that the Teamsters conspired with the other defendants to establish pension funds with long and arbitrary benefits provisions. Additionally, a substantial portion of the complaint contained allegations that the defendants breached their fiduciary duties through improprieties with regard to fund investments. The asset management claims spanned the entire history of the CSPF and challenged the conduct of the defendants as imprudent both generally and as to numerous specific loan transactions.

In 1978, the Secretary of Labor filed *Donovan* against various former trustees of the CSPF, alleging that the acts and omissions of these trustees with regard to CSPF investments were negligent and imprudent and hence in violation of ERISA. While the Secretary's complaint challenged various specific loans approved by the trustees of the CSPF, it did not contain the broad and general allegations of investment improprieties alleged in *Dutchak*. Moreover, the complaint sought relief only with regard to post-ERISA conduct, unlike *Dutchak*, which addressed both pre- and post-ERISA investments.

The *Sullivan* complaint was filed in 1979 on behalf of a class of CSPF participants and alleges that present and former trustees and other fiduciaries of the CSPF breached their fiduciary duties to the CSPF in numerous asset management transactions occurring between the inception of the CSPF in 1955 and the date of the filing of the complaint. The *Sullivan* complaint also alleged that the benefit rules of the CSPF were arbitrary and capricious and operated to deny retirement benefits to many participants on whose behalf substantial contributions had been made to the CSPF, and that the CSPF, the International Brotherhood of Teamsters, other Teamster-related entities, and the individual defendants defrauded the participants by making false and misleading statements about the benefits provided by the CSPF.

The three cases were consolidated for discovery purposes by order of the district court entered on November 27, 1979. On October 16, 1981, a settlement memorandum of understanding resolving the benefit claims, negotiated only by the private plaintiffs and the CSPF, was presented to the court. The proposed settlement was conditioned upon the resolution of the asset mismanagement claims and dismissal by the court of the *Donovan* complaint. The former trustees of the CSPF thereafter requested a stay of all substantive discovery in the three cases pending review of the settlement. This request was granted and subsequently extended over the Secretary's objections.

In response to the filing of the proposed settlement, the Secretary moved to intervene as a plaintiff in *Sullivan* and *Dutchak*, relying on his statutory right to intervene in private ERISA cases. 19 U.S.C. § 1132(h). The court granted the Secretary leave to intervene for the purpose of participating in the consideration of the settlement, and to object to the settlement. There followed an extended period of negotiation among the Secretary, the CSPF, the participants, and the insurance companies (but not between DOL and the insurance companies), accompanied by frequent pretrial conferences with reports to the court on the progress of the negotiations.

A final revised benefit settlement agreement was filed with the court on July 22, 1982. The court ruled that a settlement class should be certified, that the settlement should be preliminarily approved and notice sent to the class. The CSPF sent notice of the settlement to nearly 500,000 persons whom its records showed to be members of the class, and placed advertisements in major newspapers within the states where the CSPF has had significant numbers of participants; more than 2100 persons responded.

The district court held the final settlement hearing on June 14, 1984. Each of the major participants in the settlement

addressed the court. The court rendered an oral opinion, which was later incorporated in and supplemented by the court's Findings of Fact and Conclusions of Law, and in which the court certified the class, approved the settlement, and dismissed the complaint in *Donovan* with prejudice. The Secretary's appeal to this court followed.

## II. DISMISSAL OF *DONOVAN*

The first basis on which the Secretary challenges the settlement is the dismissal of its complaint in *Donovan* as an essential element of the overall settlement. The Secretary's argument is essentially that in dismissing the Secretary's complaint "[t]he court relied exclusively on the doctrine of res judicata, yet because the Secretary and private plaintiffs represent different interests, they are not in privity for res judicata purposes." Secretary's br. at 13.

■ Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Beard v. O'Neal*, 728 F.2d 894, 896 (7th Cir.1984). Strict identity of the parties is not necessary to achieve privity. Privity applies to successive parties who adequately represent the same legal interests. *Southwest Airlines Co. v. Texas Internat'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *Jefferson School of Social Science v. Subversive Activities Control Bd.*, 331 F.2d 76, 83 (D.C.Cir.1963); *see generally TRW, Inc. v. Ellipse Corp.*, 495 F.2d 314, 317–18 (7th Cir.1974).

The district court found privity between the *Secretary* and the *Sullivan* plaintiffs for several reasons:

(1) there is a "congruence of legal interests" between the Secretary and the private plaintiffs, (2) the private plaintiffs have adequately represented the Secretary's interests, and (3) the relationship between the private plaintiffs and the Secretary is "sufficiently close" due to the identity of their interests under ERISA.

Although the Secretary takes exception to each of these findings, these findings and the ultimate finding of privity are questions of fact, and thus will be upheld unless clearly erroneous. *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir.1981), *cert. denied*, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982); *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960–61 (5th Cir.1968).

■ We have little difficulty in this case upholding the district court's privity findings. There can be no dispute that the *Donovan* claims are the "same claims" at issue in *Dutchak* and *Sullivan*. The language of the *Donovan* complaint parallels the language of *Dutchak* and *Sullivan*. The complaints allege the same wrongful investments, seek the same relief, and are predicated upon the same provisions of ER-ISA. Indeed, in paragraph 3 of his "Motion for Leave to Intervene" in *Sullivan*, the Secretary acknowledges that the *Sullivan* language is "virtually identical to the claims set forth in *Donovan*." Similarly, on page 9 of the "Memorandum of the Secretary of Labor in Opposition to the Motion of Certain Defendants for Reconsideration of this Court's Order of March 3, 1980," he describes the *Donovan* claims as "substantially identical" to those in *Sullivan*. Therefore, the *Donovan* complaint, being predicated upon the same facts and statutory provisions as the complaints in *Dutchak* and *Sullivan*, is based upon the "same claims" as *Dutchak* and *Sullivan* for purposes of the doctrine of res judicata.

Moreover, there can be little doubt that the Secretary's claims were adequately represented in *Sullivan*. The Secretary participated actively in *Dutchak* and *Sullivan*, initially because *Donovan* was consolidated with *Dutchak* and *Sullivan* for purposes of discovery, and later through his involvement in every detail of the settlement process as a plaintiff-intervenor. Also, the Secretary was a "full participant in the settlement process."

In October 1981 the Secretary moved for leave to intervene in *Dutchak* and *Sullivan* for the purpose of objecting to the settlement and arguing that any settlement should not affect *Donovan*. From November 1981, when the Secretary's motion to intervene was granted, until the settlement received final approval in August 1984, the Secretary was a full participant in the settlement process. During that three-year period the Secretary attended and participated in thirty-one pretrial or other conferences before the court relating to the settlement. The Secretary filed motions relating to the settlement on numerous subjects. During this period, the Secretary also filed memoranda and position statements on at least eighteen different matters. We therefore conclude that the Secretary's interest has been represented adequately.

The final issue is whether the Secretary represents the same legal interests that are involved in *Dutchak* and *Sullivan*. Congress enacted ERISA in 1974 to promote the well-being and security of employees and their dependents by protecting their interests in employee benefit plans. 29 U.S.C. § 1001(a); *Leigh v. Engle*, 727 F.2d 113, 139 (7th Cir.1984). This congressional purpose is effectuated "by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). To this end, Congress required that "all assets of an employee benefit plan be held in trust by one or more trustees." 29 U.S.C. § 1103(a). Every such trustee is a "fiduciary," 29 U.S.C. § 1002(21)(A), subject to comprehensive standards of conduct. 29 U.S.C. §§ 1104–1113. ERISA prescribes, for example, that every plan fiduciary shall discharge his duties with respect to a plan "solely in the interest of the participants and beneficiaries" and with the "care, skill, prudence and diligence" that a prudent person "familiar with such matters" would employ if acting under similar circumstances. 29 U.S.C. § 1104(a)(1).

ERISA expressly authorizes participants, beneficiaries, and the Secretary of Labor to enforce the Act's fiduciary standards. 29 U.S.C. § 1132(a)(2), (3) and (5). Specifically, participants, beneficiaries, and the Secretary may bring suit in federal court and hold fiduciaries "personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary...." 29 U.S.C. § 1109(a), 1132(a)(2). A breaching fiduciary is also subject to other appropriate "equitable or remedial relief," including removal from his or her position as a fiduciary. *Id.*

The enforcement provisions of ERISA are intended to provide the Secretary, as well as participants and beneficiaries, with broad, flexible remedies to redress or prevent statutory violations. *See, e.g.,* S.REP. No. 383, 93d Cong., 1st Sess. 8, 105 (1973), *reprinted in* LEGISLATIVE HISTORY OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, 94th Cong., 2d Sess. 1076, 1173 (1976) (hereinafter cited as LEGISLATIVE HISTORY); H.REP. No. 533, 93d Cong., 1st Sess. 17, 26 (1973), *reprinted in* LEGISLATIVE HISTORY at 2364, 2373. *Leigh v. Engle, supra,* 727 F.2d at 139; *Donovan v. Mazzola,* 716 F.2d 1226, 1235, 1239–40 n. 9 (9th Cir.1983), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). The fiduciary standards "must be enforced with 'uncompromising rigidity.'" *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329–34, 101 S.Ct. 2789, 2794–96, 69 L.Ed.2d 672 (1981), *quoting from Meinhard v. Salmon,* 249 N.Y. 488, 164 N.E. 545, 546 (1928); *see also Eaves v. Penn,* 587 F.2d 453, 462 (10th Cir.1978); *Marshall v. Snyder,* 572 F.2d 894, 901–902 (2d Cir.1978).

The Secretary argues that Congress intended the Secretary of Labor to bear the primary responsibility for enforcing ERISA, both to protect the rights of plan participants and beneficiaries and to further the broader public policy goals set forth in the statute. The Secretary contends that this preeminent role is evident from an

examination of ERISA and its predecessor legislation, the Welfare and Pension Plan Disclosure Act, Pub.L. 85–836, 72 Stat. 997 (repealed 1976). .

Contrary to the Secretary's assertions, however, we think that the legislative history of ERISA demonstrates that section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), was intended to grant both private parties and the Secretary equal standing to bring an action on behalf of fund beneficiaries. Repeatedly, Congress expressed its belief that the chief weakness of the Welfare and Pension Plans Disclosure Act, the predecessor act governing pension funds, was its sole reliance upon "the initiative of the individual employee to police the management of his plan." S.Rep. No. 127, 93d Cong., 1st Sess. 4 (1973), *reprinted in* Legislative History at 613; H.Rep. No. 533, 93d Cong., 1st Sess. 4 (1973), *reprinted in* Legislative History at 2351; 120 Cong. Rec. 3978 (1974) ("Employee Benefit Security Act of 1974: Material Explaining H.R. 12906 Together With Supplemental Views," introduced by Representative Perkins), *reprinted in* Legislative History at 3295; 120 Cong.Rec. 4281 (1974) (remarks of Representative Gaydos), *reprinted in* Legislative History at 3377; 119 Cong.Rec. 147 (1973) (remarks of Senator Ribicoff), *reprinted in* Legislative History at 207; 120 Cong.Rec. 19957 (1974) (remarks of Senator Ribicoff), *reprinted in* Legislative History at 4811. It was this concern which led Congress to grant the Secretary enforcement powers under section 502(a)(2) of ERISA coextensive with those accorded private litigants. The "Civil Enforcement" provision of ERISA provides that "[a] civil action may be brought (1) ... by a participant or beneficiary ... [or] (2) by the Secretary...." 29 U.S.C. § 1132. We find nothing in the statutory language which grants any more preeminent right of action to the Secretary than to private litigants.

The legislative hearings, reports, and debates variously refer to the Secretary's role as one of "watchdog," "guardian," or "protect[or]" of the private beneficiaries. S.Rep. No. 634, 92d Cong., 2d Sess. 109 (1972); *Welfare and Pension Plan Legis-lation: Hearings on H.R. 2 and H.R. 462 Before the General Subcommittee on Labor of the House Committee on Education and Labor*, 93d Cong., 1st Sess. 373 (1973) (statement of Bernard E. Nash, National Retired Teachers Association an American Association of Retired Persons); 119 Cong.Rec. 30011 (1973) (remarks of Senator Beall), *reprinted in* Legislative History at 1620. But the legislative record clearly reflects that Congress intended the Secretary to act as a representative of fund beneficiaries. Plan participants, beneficiaries, or the Secretary of Labor on behalf of the participants and beneficiaries are allowed to bring civil actions to redress breaches of a fiduciary's responsibility or to remove a fiduciary who has failed to carry out his duties. H.R. Rep. No. 533, 93d Cong., 1st Sess. 20 (1973), *reprinted in* Legislative History at 2367; 120 Cong. Rec. 3979 (1974) ("Employee Benefit Security Act of 1974: Material Explaining H.R. 12906 Together With Supplemental Views," introduced by Representative Perkins), *reprinted in* Legislative History at 3299.

We thus believe that in granting the Secretary enforcement powers in Section 1132 Congress intended that the Secretary's interest be the same as that of the participants and beneficiaries who also had enforcement powers under Section 1132. The Secretary's only public interest enforceable under Section 1132 is that the rights of the participants and beneficiaries of a given plan are protected.

Recent statements by the Supreme Court in *Massachusetts Mutual Life Insurance Co. v. Russell*, —— U.S. ——, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), apply with particular force here. In *Massachusetts Mutual* the Court was asked to interpret the civil enforcement provisions of 29 U.S.C. § 1132. In holding that Congress did not intend to authorize remedies not expressly incorporated in ERISA, the Court stated:

> Inclusion of the Secretary of Labor is indicative of Congress's intent that actions for breach of fiduciary duty be brought in a representative capacity on

behalf of the plan as a whole. Indeed, the common interest shared by all four classes is in the financial integrity of the plan.

105 S.Ct. at 3090–91 n. 9.

While Congress provided the Secretary with far-reaching authority to monitor plan activities, we do not find this authority an indicium of Congress's intent that the Secretary's enforcement authority under Section 1132 be broader than the participants and beneficiaries' authority. We cannot read these powers in isolation from the rest of ERISA, but must construe them in the context of the entire statute. *Richards v. United States,* 369 U.S. 1, 11, 82 S.Ct. 585, 591–92, 7 L.Ed.2d 492 (1962).

The Act requires extensive disclosure to the Secretary by plan administrators of financial data and other information relating to a plan. 29 U.S.C. §§ 1021(b), 1024(a). ERISA also provides the Secretary with broad investigatory powers to monitor plans, including the authority to conduct "spot" audits on the premises of the plan and to subpoena witnesses, *id.* § 1134, and provides for cooperation between the Secretary and other government agencies in carrying out the Secretary's responsibilities. *Id.* § 1136. Rather than indicating an intent that the Secretary act independent of the interests of plan participants and beneficiaries, we think that these provisions are fully consistent with the Congressional intent that the Secretary act on behalf of the participants and beneficiaries. These investigatory powers are necessary so that the Secretary is fully informed about the plan and can monitor its implementation consistent with the interests of the participants and beneficiaries—and nothing more.

And finally the Secretary relies on *Donovan v. Cunningham,* 716 F.2d 1455 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984), to support his argument that when bringing suits under Section 1132, the Secretary is suing to safeguard "the broader public interest" as well as to seek relief for plan participants and beneficiaries. *Cunningham* in-

volved an ERISA suit by the Secretary, followed ten months later by a private class suit upon the same grounds in a different jurisdiction. The Secretary lost at the trial level and, while that case was on appeal, the private action was settled. The Secretary was not a party to the private action and in no way participated in the settlement.

The Secretary's reliance on *Cunningham* is misplaced. On the issue of whether the doctrine of res judicata or collateral estoppel barred the Secretary's appeal, the *Cunningham* court relied upon "the general principle of law that the United States will not be barred from independent litigation by the failure of a private plaintiff." 716 F.2d at 1462 (*citing United States v. East Baton Rouge Parish School Board,* 594 F.2d 56, 58 (5th Cir.1979)). The Fifth Circuit specifically noted, however, that it was "not consider[ing]" the issue whether "a prior private settlement may limit the scope of the relief that the government may seek on behalf of settling parties," *id.* at 1462 n. 10, and remanded the case for the express purpose of determining whether the private action had such a preclusive effect.

The Fifth Circuit also noted two aspects of the *Cunningham* case which are clearly distinguishable from this case. First, the court in *Cunningham* noted that the private plaintiffs' interests were in the recoupment of only their own economic losses, whereas the Secretary sought in *Cunningham* to determine the legality of specific conduct and to guard against future losses to the plan. This is clearly distinguishable from the CSPF settlement in this case wherein the legality of the trustees' conduct, recoupment of past losses, and the future integrity of the plan were clearly at issue and negotiated extensively in the course of the settlement. Second, the Fifth Circuit noted that "[a]lthough the record . . . indicates that the Secretary consulted and cooperated with counsel for the [private] plaintiffs to a limited extent, the government did not have a 'sufficient "laboring oar" in the conduct of the [private]

litigation to actuate the principles of estoppel.'" 716 F.2d at 1463 n. 11. In this case, quite the contrary clearly occurred. The Secretary's action was tried before the same court, the Secretary intervened in the private actions, the cases were consolidated for discovery purposes, and the Secretary played a major role in the discovery and in the negotiation of the settlement. This case clearly is unlike *Cunningham* because here the Secretary utilized his statutory right of intervention and became a full participant in a settlement process spanning several years. After taking such an active role in the settlement process, the Secretary cannot declare himself beyond the power of the district court once the court, contrary to his wishes, concluded that the settlement was fair and reasonable.

In light of the legislative history, we find unpersuasive the Secretary's arguments to the contrary. The fact that ERISA was enacted in reaction to the ineffective policing of the management of pension plans by participants and beneficiaries under the predecessor legislation, and that the Secretary was given a role under ERISA, it clearly does not follow that Congress intended the Secretary's role to be pre-eminent to that which plan participants and beneficiaries had under previous statutes or are to have under ERISA. Indeed, we believe their interests are precisely the same.

We therefore conclude that the district court correctly applied res judicata principles when it approved the dismissal of *Donovan* as part of the settlement.

### III. CLASS CERTIFICATION

The Secretary next argues that the district court improperly certified as one class two groups of plaintiffs with antagonistic interests. Rule 23(a) of the Federal Rules of Civil Procedure sets forth four factors which must be met before a district court can certify a cause of action as a class action. The rule provides:

(a) PREREQUISITES TO CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Secretary challenges the class certification only with regard to the fourth requirement of Rule 23(a). Essentially, the Secretary argues that the private plaintiffs are inadequate because they seek to represent a class within which there are substantial conflicting economic interests. This conflict arises, according to the Secretary, from the fact that the class, estimated at over 400,000 members, is comprised of both those pursuing benefit claims presently, estimated at around 20,000, and the remainder of the class whose benefit claims will arise in the future. The Secretary also claims that an additional conflict exists because to the extent that both benefit claims and asset mismanagement claims were successful, the asset mismanagement group would be deprived of the full enjoyment of its recovery.

The district court certified the class in this case as "consisting of all persons on whose behalf a contribution has been made or was required to be made to the Central States Southeast and Southwest Areas Pension Fund." The court recited the following facts in its order to support its conclusion that this was a proper class under Rule 23.

a. The class is in excess of 400,000 and is so numerous that joinder of all members is impracticable.

b. The complaint alleges common questions of law and fact. These include:

1. Whether the benefit rules of the CSPF are arbitrary and capricious.

2. Whether fiduciaries of the CSPF breached their fiduciary duties in con-

nection with asset management transactions of the Fund.

3. Whether the CSPF, the [Teamsters], other [Teamster]-related entities and the individual defendants conspired to disseminate false information about Fund benefit rules to limit Fund benefits, and to use Fund assets for purposes other than the best interests of the participants.

c. The claims of the numerous representative plaintiffs enumerated in the *Sullivan* and *Dutchak* complaints are typical of the benefit complaints of the class: that participants with many years of service and substantial contributions on their behalf to the Fund have been denied benefits through the arbitrary and capricious provisions of Fund benefit rules.

d. All participants benefit from the recovery by the CSPF of losses caused by breaches of fiduciary duty.

e. The representative parties are able to adequately represent the interests of the class. Their counsel, Lawrence Walner and Edmund W. Kitch, have extensive experience; they have demonstrated to the court through their negotiation of the settlement, briefing of these matters and appearances and various filings before the court, that they are able to effectively advance the interests of the class. They have done so in this litigation.

f. The settlement agreement was negotiated between counsel for the plaintiff class and the trustees of the Fund in a manner that was not collusive and which fairly and adequately represented the interests of all members of the class. No potential conflict of interest was such that counsel of any representative party was rendered unable to adequately represent the settlement class. Prior to the successful outcome of the settlement negotiations each party vigorously contested the positions of the others and nothing was done without massive fights, lots of briefs, vigorous arguments, and several different positions.

g. The Department of Labor in this case has vigorously represented the interests of those class members interested in a larger asset management recovery.

h. The present trustees of the Fund have vigorously represented the interests of those class members who desire that there be but limited expansion of benefit eligibility.

i. The investigation and discovery of the matters underlying this litigation have been under way for more than seven years. The investigation by the Department of Labor of the CSPF is believed to be its most extensive ERISA investigation. Prior to the filing of *Donovan* the Department of Labor conducted an extensive administrative investigation. The *Donovan* complaint was on file for three and one-half years before this court granted a stay of discovery in light of the then prospects for a settlement agreement. Counsel for the participants have extensively investigated matters relating to the CSPF. All parties have had sufficient information to evaluate the settlement and have provided the court with sufficient information to evaluate the reasonableness of the settlement.

j. The settlement class is reasonable.

■ The certification of a class is within the sound discretion of the trial court, reversible on appeal only for an "abuse of discretion." *Liberles v. County of Cook,* 709 F.2d 1121, 1126 (7th Cir.1983); *Simer v. Rios,* 661 F.2d 655, 668 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982). The Secretary claims that the district court abused its discretion in this case because the existence of the asset mismanagement claims and the benefit claims rendered the plaintiff class an inadequate representative under Rule 23(a)(4). "Whether a party would adequately protect the interests of the class is a question of fact depending on the circumstances of each case." *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir. 1977) (*citing Schy v. Susquehanna Corp.,* 419 F.2d 1112, 1116 (7th Cir.), *cert. denied,* 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55

(1970)). This adequacy determination is itself a matter of discretion and will not be disturbed unless an abuse of discretion is shown. *Susman*, 561 F.2d at 90. We disagree with the Secretary's assertions that the district court abused its discretion in finding that the plaintiffs in this case adequately represent the class as certified.

■ Under Rule 23, class plaintiffs cannot fairly and adequately protect the interests of the class they seek to represent if they present a claim about which members of the class have antagonistic or conflicting interests. *Hansberry v. Lee*, 311 U.S. 32, 44–45, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940); *Swain v. Brinegar*, 517 F.2d 766, 780 (7th Cir.1975). While a conflict of interest is theoretically possible in this case because of the existence of two potentially conflicting claims, no such conflict affected this settlement. *See In re Transocean Tender Offer Securities Litigation*, 455 F.Supp. 999, 1014 (N.D.Ill.1978). The multiplicity of parties already before the court assured that diverse positions would be argued vigorously to the court. The representative plaintiffs include a participant already receiving a maximum pension, who approves of the settlement. The benefits and asset mismanagement aspects of the settlement were thoroughly discussed during the negotiations. The ultimate settlement was a compromise of these different positions, drawing for much of its structure upon compromises embodied in ERISA itself. The district court thus was provided with a range of views on the merits of the positions of each of the parties, and on the merits of the settlement from diverse perspectives. The district court was keenly aware of the potential for conflict in this case and guarded against that potential affecting the fairness of the settlement.

Moreover, the joinder of the benefit and asset mismanagement claims was justified by the interrelationship between the two. Investment recovery could improve the financial position of the CSPF and reduce the need for benefit denials based upon limited funds. Proof of a systematic practice of investment negligence would provide corroborative circumstantial evidence that the trustees attended to issues of benefit entitlement in a similarly inattentive fashion. Only the CSPF could agree to remedy the benefit claims. Only the individual defendants and the insurance carriers could agree to settle the investment claims. Each negotiation proceeded separately, at separate times, with full information to the court. The district court had ample reason to conclude that "on a settlement, the question is not whether the class will be represented adequately but whether it, in fact has been adequately represented. Most assuredly here, those interests have been adequately represented." The two aspects of the complaint were closely related, but they were complementary, not in conflict.

## IV. FAIRNESS OF SETTLEMENT

The final issue on appeal is the settlement agreement itself. The Secretary challenges the settlement in several respects. First, the Secretary argues that based on both the merits of the underlying case and ERISA's public objectives, the settlement amount is inadequate. Second, the Secretary challenges the failure of the settlement to include any personal contribution to the settlement amount by the offending trustees and former trustees. And finally, the Secretary contends that the settlement should have restricted the future fiduciary activities of the former trustees and asset managers.

We begin our analysis of the settlement with the recognition that "there is an overriding public interest in favor of settlement" of class action suits. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). This is true even when the substantive issues of the case "reflect a broad public interest in the rights to be vindicated or the social or economic policies to be established." *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir.1980).

■ A class action settlement can be implemented only with the approval of the district court. Fed.R.Civ.Proc. 23(e). Before agreeing to the settlement the district

court must satisfy itself that the decree is reasonable. *Donovan v. Robbins*, 752 F.2d 1170, 1176–77 (7th Cir.1985). A district court's determination that a settlement is reasonable will be reversed by this court only on a clear showing that the court abused its discretion. *Air Line Stewards & Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.*, 630 F.2d 1164, 1167 (7th Cir.1980); *Armstrong*, 616 F.2d at 313.

■ The factors which a district judge should consider are well established: the strength of the plaintiff's case on the merits measured against the terms of the settlement; the complexity, length, and expense of continued litigation; the degree of opposition to the settlement; the presence of collusion in gaining a settlement; the opinion of competent counsel as to the reasonableness of the settlement; and the stage of the proceedings and the amount of discovery completed. *Armstrong v. Board of School Directors*, 616 F.2d at 315. The district court considered all of these factors and made findings of fact thereon. Given those findings, which we will set aside only if clearly erroneous, *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981), *cert. denied*, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982), we reject each of the Secretary's challenges to the settlement.

### A. Adequacy

The settlement approved by the district court provides for resolution of all the asset mismanagement claims in return for payment of $2 million to the CSPF from the fiduciary liability insurers of the CSPF's former trustees. The settlement also contained a number of other substantive features which related to the management and dispersion of the fund assets, including:

a. Liberalization of the Fund's benefits rules to provide a benefit to each participant who ever had ten or more years of contributions made or required to be made to the Fund. In effect, this aspect of the settlement "rolls back" the provisions of ERISA 20 years to the inception of the Fund;

b. Liberalization of the Fund's break-in-service rules;

c. Liberalization of the Fund's disability benefits rules;

d. Provision for increased reciprocity between the Fund and other Teamster-affiliated funds;

e. Establishment of a Special Hardship Appeal Committee for the purpose of allowing the payment of benefits where substantial justice requires deviation from the Fund's rules and certain other specified conditions are met;

f. Provision for increased information to Fund participants, including establishment of a toll free 24-hour telephone number and an annual report with detailed information;

g. Payment of two million dollars to the Fund by the insurance carriers in exchange for a release of liability for defense or indemnity of the former trustees on the investments claims; [and]

h. Payment of the costs of notice by the [Teamsters].

Finding of Fact 11.

These settlement provisions were not presented by the various parties to the court for a "rubber-stamp" approval. This litigation had been pending before Judge Moran since September 7, 1979. Before approving the settlement he participated in countless hours of pretrial conferences, reviewed massive submissions and ruled on a great number of legal and factual questions. In his final order on the settlement, the district judge expressly addressed the parties' concerns about the adequacy of the settlement. He stated:

22. The aspects of the settlement relating to benefits are fair, adequate and reasonable. The use of the vesting and benefit standards of ERISA as a substantive guide to equity in this situation has the benefit of providing a uniform standard applicable to both post-ERISA and pre-ERISA years of service. The requirement of a standing offer of reciprocity will tend to work to correct this

longstanding difficulty between the CSPF and the hundreds of other [Teamsters]-related pension funds and will not jeopardize the funding status of the Fund. The information reforms will improve communication between the CSPF and participants, and heighten awareness of the need for prudent and fair management of the CSPF within the [Teamsters] membership. The benefits aspect of the settlement is within the power of the trustees of the Fund to adopt and will not impose unmanageable costs upon the Fund or adversely affect the ability of the Fund to make benefit payments to others.

23. The asset management settlement is fair, adequate and reasonable. Taking into account the risks of litigation, the costs of litigation and collection, and the time value of money, it is a reasonable compromise of the asset management claims.

24. The settlement as a whole is fair, adequate and reasonable. A resolution of all the claims of these cases has the benefit of ending years of litigation over the past history of the Fund and freeing the current trustees and personnel to attend to the task of managing the Fund.

Findings of Fact 22–24.

One of the principal factors which a district court should consider in determining the reasonableness of the settlement is the strength of the plaintiff's case on the merits balanced against the settlement offer. *Armstrong,* 616 F.2d at 314. The Secretary points out that the district judge stat-

ed that he "assume[d] for purposes of evaluating the Settlement that ... the government could show a substantial liability ... [because] [i]t has to merely show imprudence." Tr. of June 14, 1984, at 80. Sole reliance on this statement to argue the imprudence of the settlement is misplaced. This statement shows that the district court was considering the value of continuing litigation in its best light.

What the Secretary's analysis seems to fail to realize, however, is that an integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation. *Grunin v. International House of Pancakes,* 513 F.2d 114, 124 (8th Cir.1975). The court identified three such costs and risks: the cost of continued litigation to the CSPF;[1] the risk that the insurance carriers would prevail on their policy defenses;[2] and the time value of money.[3] Findings of Fact 25–27. These considerations were proper and we find no abuse of discretion in the district court's conclusion that the current two million dollar settlement, combined with the other substantive aspects of the settlement, was reasonable.

### B. Contributions by Trustees

The Secretary next claims that the settlement is inadequate because it does not provide for any personal monetary contribution from the former trustees of the CSPF. ERISA specifically provides that any fiduciary "shall be personally liable to make good" for breaches of his fiduciary

---

1. The district court found that:
   Continued litigation would be costly for the parties and the CSPF. The CSPF would bear those costs in at least three ways. First, ERISA provides for the payment of plaintiffs' attorneys' fees by the Fund should they prevail. Second, continuing discovery requires the time of Fund personnel and attorneys. Third, clauses in the insurance policies might operate to cause an offset of the attorneys' fees of the individual defendants against the face amount of the policies. An advantage of this settlement over continued litigation is the saving of these costs for the Fund.
   Finding of Fact 26.

2. The court stated:

The insurance carriers have contested the continuing enforceability of the insurance policies, and asserted defenses to their policy obligations that create substantial risks that no recovery from insurance would be available after further litigation.
Finding of Fact 27.

3. The $2 million settlement sum today is worth the same as a $3.6 million recovery five years from now, at a prime interest rate of 12.5%. In the judgment of the district court, the difference of $1.6 million would not be recoverable from the former Trustees and would not be available through additional insurance contributions from Aetna. Findings of Fact 27–29.

responsibilities. 29 U.S.C. § 1109. The Secretary argues that "[a]bsent such personal liability, therefore, the settlement does nothing to achieve the Act's crucial prophylactic purposes." Secretary's br. at 51.

This argument fails in two respects. First, the overriding purpose of ERISA is to protect the interests of participants and beneficiaries of employee retirement plans. *Donovan v. Bryans,* 566 F.Supp. 1258, 1264 (E.D.Pa.1983); *Freund v. Marshall & Ilsley Bank,* 485 F.Supp. 629, 643 (W.D. Wis.1979). We have already thoroughly discussed that we are satisfied that the district court did not abuse its discretion in finding this settlement to be in the best interests of the plan participants. To the extent that retribution and deterrence are goals of ERISA, the district court found little to be gained in that respect in this case. The court found that the recovery of any substantial judgment from the individual trustees personally was impossible and that none of these trustees had served in a fiduciary capacity since 1979.[4] Similarly, to the extent that "sending a message" is part of the deterrence sought, the district court believed that "[t]hat objective has been largely served by the Department seeking and obtaining a far-reaching consent order." Finding of Fact 31(b).

Second, it does not necessarily follow that a remedial provision of the Act that would apply if this case were fully litigated must also be included in every settlement agreement under ERISA. A major consideration of settlements is that "litigants have reasonable latitude in negotiating a settlement without undercutting important national policies on their way to reaching agreement." *Armstrong,* 616 F.2d at 320.

The district court found no such undercutting in this case. We find no abuse of discretion in this determination.

### C. Injunctive Relief

The final challenge which the Secretary makes to the settlement agreement is the lack of injunctive relief. We also reject this challenge. Undoubtedly, injunctive relief is an essential element of the Secretary's enforcement responsibility. *See* 29 U.S.C. §§ 1109, 1132(a)(2) and (5); *Donovan v. Cunningham, supra,* 716 F.2d at 1462. Congress clearly intended to provide the Secretary, as well as participants and beneficiaries, with the "full range of legal and equitable remedies," including injunctions to prevent future violations and removal of fiduciaries for "repeated or substantial" violations. H.R.REP. No. 93–533, *supra,* at 17, *reprinted in* [1974] U.S.CODE CONG. & AD.NEWS 4655; S.REP. No. 93–383, 93d Cong., 1st Sess. 105–106 (1973), *reprinted in* [1974] U.S.CODE CONG. & AD. NEWS 4890, 4989.

Although trial courts typically grant injunctions against future fiduciary activity upon proof of past ERISA violations, *see, e.g., Donovan v. Bryans,* 566 F.Supp. at 1268, the district court found an injunction unnecessary in this case. The purpose of such injunctions is to protect the interests of participants and beneficiaries and to further ERISA's goal of restoring public confidence in pension plans. *Donovan v. Bryans, supra,* 566 F.Supp. at 1268. But the district court found that the provisions of the settlement already were reasonable to protect the interests of participants and beneficiaries. Also, the defendant trustees in *Donovan* had resigned their positions more than seven years before the settle-

---

**4.** In its findings, the court stated:

28. To the extent that the defendants were themselves forced to incur defense costs, those costs would further deplete the assets available to satisfy any judgment.

29. The gross assets of the defendants in *Donovan,* other than Alvin Baron and Jackie Presser, do not exceed $5,000,000 and many of those assets, if not virtually all, would be or might be unavailable to satisfy a final judgment.

30. The principal claim against Alvin Baron is proceeding, and will continue to proceed, in a separate litigation. The principal claim against Jackie Presser is of dubious merit. The oral findings are amended to note that the loss to the Health and Welfare Fund was some $42,000,000 in toto, rather than annually.

Findings of Fact 28–30.

ment. Three of the defendants in *Donovan* are now dead and four more have been convicted of crimes that bar or barred their service under ERISA. 29 U.S.C. § 1111; Findings of Fact 32 & 33.

The district court also found correctly that injunctive relief would have no effect on the future management of the CSPF, since none of the current trustees were parties to the action. Finding of Fact 32. Moreover, nothing in the settlement prevents either the Secretary or plan participants or beneficiaries from seeking injunctive relief in the future for the actual or planned service of any former trustee. Finding of Fact 34. We thus agree with the district court that the failure to provide injunctive relief in the settlement does not make the settlement unreasonable.

For the many reasons set forth in this opinion, we affirm the district court's approval of the settlement agreement in these cases, including the dismissal of the Secretary's complaint in *Donovan*.

AFFIRMED.

COFFEY, Circuit Judge, dissenting.

The settlement the district court approved involved a class action between the named plaintiffs, representing former and present Teamster union members, and the defendants, the International Brotherhood of Teamsters ("IBT"), the Central States Pension Fund ("CSPF"), and seventeen of its former trustees. The settlement agreement proposed to resolve conflicts concerning the rules governing the eligibility for pension benefits and to settle asset mismanagement claims made against the former trustees. The Department of Labor ("DOL"), not a party to the original class action, filed a separate suit alleging various claims of asset mismanagement against the former trustees. The Secretary of Labor intervened subsequently in the private plaintiffs' class action, pursuant to 29 U.S.C. § 1132(h),[1] to object to the settle-

ment because the settlement was conditioned upon the district court approving the dismissal of the DOL action against the former trustees and also the Secretary had determined that the monetary relief provided for in the settlement was inadequate. The district court, after making a finding that the settlement was fair and reasonable, approved the settlement and dismissed the DOL's separate action finding that the doctrine of *res judicata* barred the Secretary's claim as the Secretary was in privity with the class since his interest and the interest of private class action plaintiffs in the litigation were the same. The district court also found that since the Secretary had intervened and had been "a full participant in the settlement process," he was "bound to the extent of his own intervention." The majority adopts the reasoning of the district court and affirms the court's approval of the settlement. A review of the record and the applicable law, however, clearly reveals that the Secretary of Labor, and only the Secretary of Labor, is authorized by Congress to represent the public interest in the enforcement of the ERISA statute, an interest which is not only separate but also distinct from the class's interest in seeking money damages for the trustees' mismanagement of the fund. Thus, since the Secretary's interest is separate and distinct from the class, I fail to understand how his interest can be considered as in privity with the class. Further, it is clear from the record that the mismanagement claimants' interests are adverse to the benefit claimants' interests and thus the district court erred in certifying these two groups as one class. Accordingly, I dissent.

## I

This case has a complex history dating back to the middle 1970's when aggrieved members of the International Brotherhood of Teamsters Union initially filed various

---

1. Section 1132(h) provides:
   "A copy of the complaint in any action under this title by a participant, beneficiary, or fiduciary ... shall be served upon the Secretary and the Secretary of the Treasury by certified mail. Either Secretary shall have the right in his discretion to intervene in any action, ..."

actions against their pension fund known as the Central States Pension Fund, the CSPF's former trustees and the IBT. The first suit was a class action, *Dutchak, et al. v. International Brotherhood of Teamsters, et al. ("Dutchak")*, filed on behalf of individual Teamster members against the IBT and the CSPF in 1976 alleging that the benefit eligibility rules for pension payments were arbitrary and unreasonably restrictive and further the trustees had mismanaged the Fund's assets. In the aftermath of the Department of Labor investigation concerning the alleged mismanagement of the Central States Pension Fund, the DOL filed a separate action against the former trustees of the CSPF, *Donovan v. Fitzsimmons, et al.*, in 1975 and alleged that the former trustees had mismanaged the pension fund, in violation of 29 U.S.C. § 1104,[2] causing losses of between $50 to $70 million due to imprudent loans and improper investments in various real estate syndicates, hotels, including gambling casinos in Las Vegas, and other businesses.[3] After the DOL filed the *Donovan* action the named plaintiffs in *Dutchak* requested leave to file an amended complaint with the court essentially incorporating most of the claimed fiduciary duty violations under ERISA set forth in the *Donovan* complaint; however, the district court did not rule on this motion. Thereafter, in 1979 the attorneys representing the plaintiffs in *Dutchak* filed a class action, *Sullivan, et al. v. Fitzsimmons, et al.*, incorporating all of the allegations set forth in the *Donovan* and *Dutchak* complaints. In 1979, the court ordered the three cases consolidated for purposes of discovery.

On October 16, 1981, a proposed settlement was reached between the private plaintiffs in the *Dutchak* and *Sullivan* actions and the Central States Pension Fund and Teamsters Union resolving the benefit claims. According to the terms of the proposed settlement the CSPF agreed to substantially liberalize the rules governing the eligibility for pension benefits. The plaintiffs and the CSPF projected that the liberalized rules governing eligibility for pension benefits would require approximately $140 million to be set aside for the additional participants who might now qualify for pension benefits under the proposed settlement. The proposed settlement between the private plaintiffs and the Central States Pension Fund also conditioned the final settlement upon the resolution of the asset mismanagement claims and the dismissal of the DOL's *Donovan* action. During the period of these settlement negotiations between the named plaintiffs and the CSPF and IBT, the Department of Labor was not informed that these parties were discussing settlement of the Secretary's action in *Donovan*, and thus he had no knowledge of, and was not a party to, any of these negotiations. In fact, as counsel for the named plaintiffs disclosed during the October 21, 1981 hearing, the CSPF directed the plaintiffs not to discuss the settlement negotiations with the Secretary: *"Now as a*

---

**2.** Title 29 U.S.C. § 1104, provides, in pertinent part:

"(a)(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(A) for the exclusive purpose of:

(i) providing benefits to participants and their beneficiaries; and

(ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.

\* \* \* \* \* \*

**3.** In 1981, the DOL amended its complaint to include the CSPF as a party defendant. The DOL and the CSPF entered into a consent decree in 1982 providing for a special counsel to overlook the management of the CSPF in the future.

*condition of the negotiations, we were required [by the CSPF] not to communicate with the Department of Labor about this activity or the contents....*[4] (Emphasis added). Subsequently, in November 1981, after the Secretary of Labor became aware of this highly unusual caveat, the DOL moved to intervene as a plaintiff in the *Sullivan* and *Dutchak* class actions, pursuant to its right of intervention under 29 U.S.C. § 1132(h).

On June 13, 1984 the final settlement agreement between the plaintiffs and the defendants was filed with the court, incorporating an Insurance Settlement Agreement that provided that the CSPF's two insurance companies for the former trustees, Aetna and Lloyds of London, would pay $2 million to the CSPF to settle the asset mismanagement claims made against the former trustees. The insurance companies agreed to pay the $2 million only if the former trustees agreed to release the respective companies from any further liability.[5] (Department of Labor's Appendix at 189–90).

Between the time that the DOL intervened in the *Sullivan* and *Dutchak* actions and the filing of the settlement agreement between the private plaintiffs and the defendants in June 1984, the Secretary did participate in the class actions with the filing of various memorandums with the court urging that the class not be certified since the named plaintiffs could not properly and adequately represent the asset mismanagement group's interests. The Secretary also filed memoranda with the court addressing the nature and scope of the notice to be provided to the proposed class. In the spring of 1984, notice was sent to all proposed class members (the benefit group and the asset mismanagement group) dis-

closing the terms of the settlement. The district court also permitted the Secretary to send an accompanying letter to the class urging that the settlement be rejected.

On June 13, 1984, the district court held a hearing to review all of the terms of the settlement. During this hearing, the Secretary of Labor objected to the settlement of the asset mismanagement claims contending that the anticipated recovery was wholly inadequate in light of the number and dollar amount of the claims against the former trustees and also that the settlement agreement failed to allow recovery from the personal assets of the former trustees. Some two and one-half months later, on August 27, 1984, the court issued its written findings and certified as one class "all persons on whose behalf a contribution has been made or required to be made" for purposes of approval of the settlement. This class consisted of all the benefit and asset mismanagement unnamed plaintiffs. Throughout the entire proceedings, the Department of Labor contested the ability, authority and propriety of the named plaintiffs to represent both the benefit and asset mismanagement unnamed plaintiffs; however, the court found that the unnamed plaintiffs were adequately represented under Fed.R.Civ.P. 23(a)(4) which provides that "the representative parties ... fairly and adequately protect the interests of the class." In reaching its conclusion that Fed.R.Civ.P. 23(a)(4) was satisfied, the court determined that the DOL had adequately represented the interest of those members of the class who sought a larger recovery for the asset mismanagement claims, and also that the defendant CSPF had adequately represented the interests of those members of the class

---

**4.** The CSPF had the necessary leverage to make this demand during the negotiations since it was the party participating in the settlement negotiations that controlled the liberalization of the pension benefit rules.

   Also, although the record does not cite in so many words, the private plaintiffs apparently engaged in preliminary discussions with the insurance companies, during this period of negotiations, dealing with payments to be made to the

fund to settle the asset mismanagement claims of the private plaintiffs against the former trustees.

**5.** The total liability coverage of the two policies was approximately $7 million; however, questions were raised during the course of this litigation as to the scope of the protection under these policies.

who sought to limit the liberalization of the eligibility rules governing benefits.

The court then turned to the terms of the settlement and made a unique finding, without any citation of legal authority, that since the settlement had been presented to the court as a package, the entire settlement "must stand or fall as a package." As will be discussed in this opinion, I am not aware of any obstacle presented in this fact situation or in the law that would have prevented the district court from dividing and separating the benefit claims and asset mismanagement claims. After reviewing the settlement terms, the court concluded that the settlement was fair and reasonable. To support this conclusion the court found that all parties had an opportunity to litigate the contested issues and that the $2 million to be received from the insurance companies would be the greatest amount attainable under the circumstances.[6] In addition, the court concluded that the cost of further litigation in this case outweighed the benefits to be gained. In approving the settlement, the court found that there was no reason to believe that any of the former trustees were likely to commit ERISA violations in the future since the former trustees were not now serving on the CSPF board and a consent decree had been entered providing for special counsel to overlook future management of the Fund. The court next addressed the issue of the continued viability of the Secretary's action in *Donovan* and concluded that since there was a "congruence of legal interests" between the DOL and the private plaintiffs, privity existed between the parties for purposes of applying the doctrine of *res judicata* to bar the Secretary's action in *Donovan*. The court also found that the Secretary was bound by the settlement agreement since he had intervened in class action. Finally, the court approved the settlement and dismissed the *Sullivan, Dutchak* and *Donovan* actions.

## II

The DOL's primary contention on appeal is that the district court misapplied the doctrine of *res judicata* when it found that the DOL was in privity with the private plaintiffs in this action. The defendants argued to this court that the DOL acts merely as a representative of the interests of the beneficiaries of the fund. The DOL, however, contends that its interest in this litigation is much broader, encompassing its obligation to protect the interests of the general public that includes reinforcing confidence in a private pension system that involves billions of dollars in assets and investments affecting the United States economy, the treasury, as well as supervising the enforcement of the ERISA statute. Thus, the crux of the issue in this case is whether the DOL has an "interest" separate and distinct from that of the private plaintiffs for purposes of determining whether privity exists between the DOL and the private plaintiffs in *Dutchak* and *Sullivan*.

The two private actions, *Dutchak* and *Sullivan*, are class actions joining all beneficiaries and potential beneficiaries of the pension fund. The district court certified this class, after proper notice had been given to all potential class members, as "consisting of all persons on whose behalf a contribution has been made or was required to be made …" to the CSPF. In section III of this dissent I discuss and conclude that the district court erred in certifying a single class in this case. I also disagree with the court's determination that the Secretary was in privity with the private class action plaintiffs for purposes of *res judicata* because the United States Secretary of Labor has a separate and distinct role and exclusive interest, being the only person authorized by Congress to represent the public interest in the enforce-

---

**6.** Specifically, the district court found that the gross assets of all the trustees, except for Barron and Presser, did not exceed $5 million and that after the prior liens on their property and the cost of this litigation were considered, the po-

tential recoverable amount would be well below $2 million. The court also found that the asserted defenses of the insurance companies created a substantial risk that recovery would not be available if the case went to trial.

ment of ERISA statutes. Because the Secretary represents the public interest in enforcing the ERISA statutes—a responsibility solely entrusted to the Secretary and not to any substituted private litigants, whether court authorized or not—he is not in privity with the private plaintiffs.

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). In order for the doctrine of *res judicata* to apply there must be (1) a final judgment on the merits, (2) an identity of the cause of action between the two actions, and (3) an identity of parties or their privies in the two actions. *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982); *Church of the New Song v. Establishment of Religion*, 620 F.2d 648, 652 (7th Cir. 1980), *cert. denied*, 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981); *see also* 1B Moore's *Federal Practice* ¶ 0.4110[1] and 0.411[1]. Privity between parties is established where those parties' interests are so closely aligned that they represent the same legal interests. *See Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 95 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).[7]

In this case, the district court found that there was an identity of the cause of action between the Secretary of Labor in *Donovan* and the private plaintiffs in *Sullivan* and *Dutchak* since their claims were based upon the same operative facts and alleged statutory violations. The DOL does not contest this finding in their brief before this court. The district court also found that privity was established between the

Secretary of Labor and the private parties since:

"(1) there is a 'congruence of legal interest' between the Secretary and the private plaintiffs, (2) the private plaintiffs have adequately represented the Secretary's interests, and (3) the relationship between the private plaintiffs and the Secretary is 'sufficiently close' due to the identity of their interests under ERISA. *Southwest Airlines Co. v. Texas International Airlines*, 546 F.2d 84, 102 (5th Cir.), *cert. denied*, 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977)."

The court, having determined that *Sullivan* and *Donovan* involved the same claims and that the DOL and private plaintiffs shared similar interests, and thus were in privity, found that the doctrine of *res judicata* barred further litigation in the *Donovan* action. The court also concluded that, although the DOL originally intervened in the *Sullivan* action "for the limited purpose of: (1) expressing the Secretary's views regarding the appropriateness and adequacy of the proposed settlement; and (2) participating in the contemplated settlement hearings ...,"[8] the DOL had been a "full participant in the settlement process" and thus was "bound to the extent of his own intervention." District court's Findings of Fact and Conclusions of Law at 22–25 (August 27, 1984). The majority, in holding that the Secretary of Labor is precluded from pursuing his separate ERISA action, adopts the district court's reasoning in its entirety.

**A. The Parties' Interests**

Whether or not *res judicata* properly applies in this case depends upon the statutory role of the DOL in bringing an ERISA action. Thus, the issue of whether or not privity exists between the DOL and the

---

**7.** Privity has been appropriately described as an "elusive concept," *see Nash Cty. Bd. of Ed. v. Baltimore Co.*, 640 F.2d 484, 493 (4th Cir.1981), but as described in *Nash City Bd. of Ed.*:

"[Privity] designates ... a person so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.... Or ... the term is sufficiently

inclusive 'under the federal law of res judicata [that] a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.'"
*Id.* at 493–94 (citations omitted).

**8.** District Court Order, dated November 17, 1981.

private plaintiffs is a question of law subject to a review *de novo* on appeal. *See Southwest Airlines Co.*, 546 F.2d at 95.[9] Initially I turn to the legislative history of ERISA to determine the primary interest and obligation of the Secretary of Labor in enforcing the ERISA laws.

Prior to the enactment of ERISA, federal involvement in the monitoring of the pension funds in this country was minimal. Because of the growth of private pension plans and the problems concurrent therewith, Congress in 1958 expanded the federal government's role in supervising and monitoring qualified pension plans with the enactment of the Welfare and Pension Claim Disclosure Act; however, this Act provided somewhat limited disclosure of information and filing of reports for the pension funds. *See* Hutchinson and Ifshin, *Federal Preemption Under The Employee Retirement Income Security Act of 1974*, 46 U.Chi.L.R. 23, 28 (1978). Under this monitoring system, the primary responsibility for supervising the pension funds was left to the beneficiaries, "reserving to the states the detailed regulations relating to insurance and trusts...." *Id.* citing H.R. Rep. No. 2283 *reprinted in* [1958] U.S. Code Cong. & Ad.News 4181, at 4187. ERISA was enacted in 1974 largely because this system of regulation was ineffective in monitoring and preventing fraud and other pension fund abuses.

> "Experience ... has demonstrated the inadequacy of the Welfare and Pension Plans Disclosure Act in regulating the private pension system. It is weak in its limited disclosure requirements and wholly lacking in substantive fiduciary standards. Its chief procedural weakness can be found in its reliance upon the initiative of the individual employee to police the management of his plan."

S.Rep. No. 1150, 92d Cong., 2d Sess. 5 (1972), *cited in* Hutchinson, *supra; see also* H.R.Rep. No. 93–533, 93d Cong., 1st Sess. 17 (1973), *reprinted in* [1974] U.S. Code Cong. & Ad.News 4639, 4655. Congress perceived this problem to be national in scope warranting the federal government's intervention to safeguard the national interest in the private pension fund system and the beneficiary's interest in a retirement income.

> "§ 1001. Congressional findings and declaration of policy
>
> (a) The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; *that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations;* that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee information and adequate safeguards concerning their operation, *it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation,*

---

**9.** The majority incorrectly states our standard of review in this case when it states that the finding of privity is a "question of fact, and thus will be upheld unless clearly erroneous." In those cases relied upon by the majority, *Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1109 (6th Cir. 1981), *cert. denied*, 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982) and *Astron Indus. Assoc., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960–61 (5th Cir.1968), the determination of privity was based upon the district court's resolution of factual question as to the role one of the parties played in the prior action and, thus, the courts noted that the finding of privity is a question of fact. In this case, the district court's privity ruling rests on an erroneous interpretation of the Secretary's role in an ERISA action and not a disputed question of fact. Thus, the clearly erroneous standard of review set forth in Fed.R. Civ.P. 52 governing "findings of fact" does not apply in this case.

*and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment;* that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; *and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce,* that minimum standards be provided assuring the equitable character of such plans and their financial soundness."

29 U.S.C. § 1001(a) (emphasis added). As set forth in ERISA's statement of purpose, Congress was aware of the public's proper concern that these pension plans receive adequate protection, supervision and monitoring and was also concerned with the potential effect these plans might have on interstate commerce and the public treasury. Specifically, Congress recognized that the plan's economic impact was interstate; that the plans affected the rational public interest in employment stability and industrial relations; that they substantially affect the revenues of the United States since they are afforded preferential tax treatment; and, that they affect the free flow of commerce and the general welfare.

To accomplish the desired remedial and protective purposes of ERISA, Congress required that all assets of the employee benefit plans "be held in trust by one or more trustees," 29 U.S.C. 1103(a), subject to comprehensive standards of conduct wherein a fiduciary or trustee must discharge his duties solely in the interests of the participants "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters were to use...." 29 U.S.C. § 1104(a). The Congressional enactment further directed that the fiduciary could be "personally liable to make good to such plan any losses to the plan resulting from each such breach ..." of his fiduciary duty, 29 U.S.C. 1109(a), and the civil action to recover the losses caused by the fiduciary's breach of duty could be brought by the "Secretary, or by a participant [in a pension plan]...." 29 U.S.C. § 1132(a)(2). Moreover, Congress provided that "a copy of the complaint in any action ... shall be served upon the Secretary...." and that the Secretary "shall have the right in his discretion to intervene any action...." 29 U.S.C. § 1132(h).

The defendants argue that in including this right to intervene in the ERISA statutory scheme, Congress intended that the Secretary could exercise his option to intervene in the private litigation once he determined that intervention was in the best interests of the participants and thus the Secretary's only interest in this litigation is to represent the interests of the beneficiaries and plan participants alone. However, the defendant's unnecessarily restrictive interpretation of the Secretary's role is contradicted by the legislative history and statutory scheme of ERISA. The congressional findings and declaration of policy recited above clearly indicate that Congress not only was concerned about the welfare of individual beneficiaries but also considered the impact of employee benefit plans on the stability of employment, the successful development of industrial relations, the revenues of the United States, the free flow of commerce, and the general welfare. 29 U.S.C. § 1001. An examination of the statutory scheme reveals the Secretary's role in protecting these public interests. Contrary to the majority's assertion that, "nothing in the statutory language ... grants any more preeminent right to the Secretary than to private litigants," it is eminently clear that the Secre-

tary alone may bring a suit to collect a civil penalty for violations of § 1106 (prohibited transactions). Indeed, the Secretary is responsible for detecting, investigating, and monitoring civil and criminal violations of ERISA and referring cases to the Attorney for prosecution. 29 U.S.C. § 1136. Thus, Congress gave the United States Secretary of Labor the responsibility and authority to investigate and monitor employee benefit plans. *See* 29 U.S.C. § 1134. Moreover, by requiring service of every complaint on the Secretary, Congress clearly intended to give notice to the DOL of the ERISA action and to employ the full power and weight of the United States government in enforcing the ERISA statutes. *See* 29 U.S.C. § 1132(h). In particular, intervention in private suits enables the Secretary to prevent potentially harmful precedent caused by private plaintiffs' mishandling of a case and to promote uniformity of law. *Id., see* H.R.Rep. No. 93–533 *reprinted in* [1974] U.S.Code Cong. & Ad.News 4639, 4650; *cf. United States v. Mendoza,* 464 U.S. 154, 104 S.Ct. 568, 78 L.Ed.2d 379 (1984); *cf. United States v. East Baton Rouge Sch. Bd.,* 594 F.2d 56, 58 (5th Cir.1979) (Voting Rights Act). Imposing a rule that the United States would be barred from independent litigation by the failure of private plaintiffs "would impose an onerous and extensive burden upon the United States to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention." *Id.* at 58. In the absence of an explicit legislative directive that the Secretary must intervene in private suits or be barred by *res judicata,* the courts should not assume that the Congress expected the Secretary to undertake such a burden.

Moreover, the majority misreads the Supreme Court's decision in *Massachusetts Life Ins. Co. v. Russell,* —— U.S. ——, 105 S.Ct. 3085, 3090–91 n. 9, 87 L.Ed.2d 96 (1985) when it cites this decision as supporting the position that the interests of the Secretary and the beneficiaries are the same. The issue in *Russell* was whether "a fiduciary to an employee benefit plan may be held personally liable to a plan participant or beneficiary for extra-contractual compensatory or punitive damages caused by improper or untimely processing of benefit claims." *Id.* 105 S.Ct. at 3087. The plaintiff argued that § 502(a)(2) [29 U.S.C. § 1132(a)(2)] authorizing a beneficiary to bring an action against a fiduciary who has violated § 409 [29 U.S.C. § 1109] allowed her personal recovery; the defendant argued that recovery for a violation of § 409 [§ 1109] inures to the benefit of the plan as a whole. *Id.* at 3089. The Supreme Court agreed: "A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Id.* at 3090. The Court mentioned in footnote 9 that, "[i]nclusion of the Secretary of Labor is indicative of Congress' intent that actions for breach of fiduciary duty be brought in an representative capacity on behalf of the plan as a whole. Indeed, the common interest shared by all four classes [of plaintiffs under 29 U.S.C. § 1132(a)(2)] is in the financial integrity of the plan." A review of § 502 (29 U.S.C. § 1132) reveals that this passing inference to a "representative capacity" and the "financial integrity of the plan" is not to be read as broadly as the majority would have us believe. While the Secretary may sue to protect the financial integrity of the pension plan, and thus act in a representative capacity, he also has other responsibilities, duties and interests in bringing his action. For example, only the Secretary may collect additional civil penalties pursuant to 29 U.S.C. § 1132(a)(6); this is clearly an example of the Secretary acting in a role other than as a representative of a particular plan seeking to recover monetary claims for that plan.

## B. The Secretary is Not Barred by Private Litigation.

Moreover, the majority fails to recognize that courts have traditionally held that Government actions enforcing federal stat-

utes implicating both public and private interests are not precluded by separate, private litigation. For example, the Voting Rights Act protects the public interest in the "due observance of all constitutional guarantees" and the individual's right to vote. *See East Baton Rouge,* 594 F.2d at 58, *quoting United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960). The Supreme Court has held in separate cases that the Attorney General "is not bound by the resolution of § 5 [Voting Rights Act] issues in cases to which he was not a party." *Hathorn v. LaVorn,* 457 U.S. 255, 268 n. 23, 102 S.Ct. 2421, 2430 n. 23, 72 L.Ed.2d 824 (1983); *City of Richmond v. United States,* 422 U.S. 358, 373–74 n. 6, 95 S.Ct. 2296, 2305 n. 6, 45 L.Ed.2d 245 (1975) ("whatever the merits of the District Court's position on this collateral estoppel issue, we find controlling the non-participation of the United States ... in the *Holt I* case." 422 U.S. at 373–74 n. 6, 95 S.Ct. at 2305); *see also United States v. East Baton Rouge Parish School Board,* 594 F.2d 56, 58 (5th Cir.1979) (Voting Rights Act). Similarly, in Title VII actions the government is not bound by previous litigation involving private parties. *New Orleans S.S. Ass'n v. E.E.O.C.,* 680 F.2d 23, 25 (5th Cir.1982) ("EEOC may challenge a transaction which was the subject of prior judicial scrutiny in a private suit, if the subsequent challenge seeks different relief.") *E.E.O.C. v. North Hill Passavant Hosp.,* 544 F.2d 664, 672 (3d Cir.1976) (Title VII); *E.E.O.C. v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1361 (6th Cir.), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975) ("EEOC [Title VII action] sues to vindicate the public interest, which is broader than the interests of the charging parties.... [T]he EEOC is not barred by the doctrine of res judicata from basing its complaint on the charges of discrimination which it never agreed to settle."); *cf. General Telephone Co. v. EEOC,* 446 U.S. 318, 333, 100 S.Ct. 1698, 1707, 64 L.Ed.2d 319 (1980) (Addressing the issue of whether the EEOC could seek classwide relief without being certified as a class under Fed.R. Civ.P. 23 the Supreme Court held that the

EEOC did not have to comply with Rule 23 since it sues to further the public interest and there are "differences between public and private interests involved"). Moreover, the government's special status in enforcing the public interest is not limited to statutes implicating underlying constitutional concerns as in the Voting Rights Act and Title VII; the government likewise enjoys this special status in antitrust cases in order that it might ensure proper freedom in the market. In *Sam Fox Publishing Co. v. United States,* 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961) the Court noted that under the Sherman Act:

> " 'private and public actions were designed to be cumulative, not mutually exclusive'.... [T]he scheme of the statute is sharply to distinguish between government suits ... and private suits.... Different policy consideratons govern each of these.... [Thus] it is clear that just as the Government is not bound by private antitrust litigation to which it is a stranger, so private parties similarly situated, are not bound by government litigation."

*Id.* at 689–90, 81 S.Ct. at 1312–13. Similarly, the government's interest in an ERISA action is enforcement of fiduciary standards to ensure the financial stability of billions of dollars of assets which in turn have a tremendous effect on the national economy as well as Treasury of the United States. Thus, aside from protecting the individual beneficiaries of these pension programs, the government in this case clearly has a separate and unique interest in protecting the very integrity, heart and lifeline of the program itself. In an ERISA action the Government also participates in order that it might sustain the very public confidence so necessary to the vitality of the enormous private pension fund system that provides billions of dollars of capital for investments affecting interstate commerce, and that substantially influences the revenues of the United States government; further, the Secretary sues to enforce the fiduciary obligations undertaken by trustees of these pension funds and to

assure uniformity of the law under the ERISA statutes. A private litigant is in no position to assume the Secretary's responsibility to insure that the ERISA statutes are uniformly enforced since his only interest in bringing an action is to seek recovery for his own losses.

The rule that Government actions enforcing federal statutes that implicate both public and private interests are not precluded by separate, private litigation was applied to ERISA in the Fifth Circuit's decision in *Donovan v. Cunningham,* 716 F.2d 1455 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3533, 82 L.Ed.2d 839 (1984).[10]

> " 'This principle is based primarily upon the *recognition that the United States has an interest in enforcing federal law that is independent of any claims of private citizens....* Also, any contrary rule would impose an onerous and extensive burden upon the United States to monitor private litigation in order to ensure that possible mishandling of a claim by a private plaintiff could be corrected by intervention' "

> \*  \*  \*  \*  \*  \*

"The cases that have developed this principle have often involved statutory schemes like ERISA that provide for private enforcement of individual rights *as well as suits by the government to vindicate the public interest in compliance with the law.* For example, in suits to enforce Section 5 of the Voting Rights Act, the Attorney General of the United States is not bound by the results of the prior litigation of the same issues by private parties. *Hathorn v. Lovorn,* 457 U.S. 255, 268 n. 23, 102 S.Ct. 2421, 2430 n. 23, 72 L.Ed.2d 824 (1982); *City of*

*Richmond v. United States,* 422 U.S. 358, 373 n. 6, 95 S.Ct. 2296, 2305 n. 6, 45 L.Ed.2d 245 (1975); *East Baton Rouge Parish, supra.* Similarly, the Equal Employment Opportunity Commission may bring discrimination charges against an employer even after its employees have settled their private claims. *New Orleans Steamship Ass'n v. EEOC,* 680 F.2d 23, 25 (5th Cir.1982); *EEOC v. Kimberly-Clark Corp.,* 511 F.2d 1352, 1361 (6th Cir.), *cert. denied,* 423 U.S. 994, 96 S.Ct. 420, 46 L.Ed.2d 368 (1975)."

*Cunningham,* 716 F.2d at 1462 (emphasis added). Thus, *Cunningham* observed:

> "As in those cases, [Title VII and Voting Rights Act] the Secretary in the present case seeks to vindicate a public interest that is broader than the interests in the Alabama lawsuit. Those plaintiffs were interested in recouping only their own economic losses; *the Secretary seeks to determine the legality of the specific conduct and to prevent those who have engaged in illegal activity from causing loss to any future ERISA plan participant.* Thus, although the monetary settlement in the prior litigation may have achieved the goals of the private plaintiffs, it is clearly inadequate to vindicate the broader interest of the Government."

*Id.* (emphasis added).

As recognized in the *Cunningham* decision, the Secretary in an ERISA action has an interest entirely separate and distinct from that of a private litigant since he seeks "to determine the legality of the specific conduct and to prevent those who have engaged in illegal activity from causing loss to any future ERISA plan participant." In its attempt to distinguish the *Cunningham* decision, the majority misconstrues

---

**10.** *See also Picardi v. Chicago Truck Drivers,* 581 F.Supp. 794, 797 (N.D.Ill.1983). In *Picardi,* the district court recognized that:

> "Privity for *res judicata* purposes expresses the idea that a person is so identified in interest with the party in a previous litigation that precisely the same legal right in respect to the subject matter is involved. In this case, the interests presented by the Secretary and by

Picardi are not precisely the same. The Secretary's action is brought to assure the union's compliance with the statutory law. He represents the 'public interest,' whereas, Mr. Picardi brings his action to obtain relief from damage to his personal interest and that of the other members of his class ... it cannot logically be said that the plaintiff here is in privity with the Secretary of Labor."

the *Cunningham* holding when it selectively quotes footnote 10 that "a number of courts have suggested that a prior private settlement may limit the scope of the relief that the government may seek on behalf of the settling parties." The issue addressed in footnote 10 was whether the plaintiff's monetary recovery could limit the Secretary's claims for monetary relief; footnote 10, however, does not address the separate issue of whether the Secretary has a separate and distinct interest from the beneficiaries in the litigation. Indeed, as previously pointed out, the Secretary's interest is both separate and distinct. Further, in footnote 10 the *Cunningham* court recognized that the Secretary may seek other forms of relief, including injunctive relief, and thus would not be barred from pursuing his action against the trustees. In this case, the Secretary brings his action in order to protect the workers' retirement incomes, to assure uniform enforcement of the ERISA fiduciary obligations and to maintain and reinforce public confidence in the integrity and the financial well-being of the private pension system that provides billions of dollars for capital investments in public as well as private enterprises. The Secretary of Labor's interest in an ERISA action is thus clearly separate and distinct from the private plaintiffs' interests.

## C. Intervention

The majority also attempts to distinguish *Cunningham* on the basis that in that case the Secretary did not intervene in the private class action, while in this fact situation the Secretary did intervene in the *Sullivan* and *Dutchak* actions pursuant to its automatic right of intervention under 29 U.S.C. § 1132(h) to object to the terms of the settlement. The fact that the Secretary intervened in the *Sullivan* and *Dutchak* actions, however, does not and should not preclude him from litigating his separate claims since the Secretary was forced to intervene after he learned that the private litigants had entered into backroom negotiations, without the Secretary's knowledge or participation, culminating in a complete and binding settlement agreement condi-

tioning the entire settlement of the case upon the dismissal of the Secretary's action, without the Secretary's knowledge, participation or consent. Thus, on October 16, 1981, the private named plaintiffs in *Dutchak* and *Sullivan* and the CSPF published a memorandum of understanding disclosing the terms of a potential settlement encompassing the entire action (the asset mismanagement and benefit claims). This memorandum provided for settlement of the contested eligibility rules, and conditioned their agreement on the settlement of the asset mismanagement claims against the former trustees and dismissal of the DOL's action in *Donovan*. As noted by the plaintiffs' attorney at the October 21, 1981 status hearing, as a condition of the negotiations, *the plaintiffs were required by the CSPF not to communicate with the Department of Labor concerning the potential settlement*. Once the Secretary learned of the settlement terms he was alarmed and surprised that the parties would even attempt to condition the settlement of a private plaintiff's action on the basis of the dismissal of his public interest action. Thus, the Secretary only intervened for the limited purpose of objecting to the terms of the settlement, including the highly questionable caveat that the DOL "not be advised" of the settlement negotiations as the parties well knew that he could not possibly agree to such a settlement due to his sworn public duty of enforcing the ERISA statutes. I fail to understand how the district court could even allow and approve a settlement where the parties have excluded a crucial participant, the Secretary of Labor, from the negotiations leading to a settlement based upon the dismissal of the Secretary's ERISA action. Nevertheless, the record reveals that after the Secretary intervened for a very limited purpose and that he did participate in the settlement hearings to the extent of litigating issues involving class certification and proper notice to be given to the class, and requesting discovery of financial information from the former trustees. The Secretary, however, did not negotiate with

the insurance companies or their insureds, the former trustees, concerning the amount of money to be recovered by the fund as the former trustees were not willing to negotiate with the Secretary at any time during the course of this litigation. Certainly, these defendants would have no interest in negotiating with the Secretary since it was their position that the Secretary's action was barred under the doctrine of *res judicata.* As demonstrated by the facts in this case, the Secretary had no choice but to intervene in the private class action to protect his rights (understandably so because the terms of the settlement anticipated the dismissal of the Secretary's action), and thus his limited participation must not preclude him from fulfilling his statutory duty and obligation in pursuing his separate enforcement action.[11]

Further, the general rule is that "once intervention has been allowed, the original parties may not stipulate away the rights of the intervenor." 3B Moore's *Federal Practice* § 24.16[6] at 24–180, 181 (2d ed. 1983). For example, in *Wheeler v. American Home Products,* 563 F.2d 1233, 1237–38 (5th Cir.1977), the Fifth Circuit held that the district court erred when it approved a settlement between the original plaintiffs and defendants and dismissed the entire action with prejudice without considering the rights of the intervenor. *See also Harris v. Amoco Production Co.,* 768 F.2d 669, 38 F.E.P. 1227, 1235 (5th Cir.1985) (The EEOC, which represents the public interest, should not be dismissed from a case in which it intervened after the private litigants settled their claims). The precise issue in this case is whether the Government has any right or interest separate and distinct from that of the private plaintiffs in enforcing the provisions of ERISA. As previously demonstrated, it is clear that the Secretary does have a separate, distinct

and unique public interest, duty and responsibility in bringing this ERISA action to enforce the trustees fiduciary duties, to ensure public confidence in the private pension system that provides billions of dollars of capital for investments affecting federal tax revenues and interstate commerce, and, most importantly, to protect worker's retirement incomes. Further, the Secretary of Labor has a separate interest when he intervenes so as to prevent harmful precedent from being established and to ensure uniformity in the enforcement and application of ERISA laws. Moreover, in his amended complaint the Secretary petitioned for injunctive relief, separate from his requested relief for recovery of monies lost through the trustees' mismanagement of the Fund's assets. Although the district court did state that the Secretary could prove substantial liability for the imprudent loans, the settlement provided for no injunctive relief, as requested by the Secretary, to prevent former trustees from holding similar positions of trusts in the future. The appellees argue that the failure to provide for injunctive relief is inconsequential since the former trustees have not served on the board of CSPF for seven years and most are not now serving on any other pension trust board. Thus, the appellees argue that any potential threat is at best minimal since the trustees were not in any supervisory position. However, the Secretary protects the public interest in "prevent[ing] those who have engaged in illegal activity from causing loss to *any* future ERISA plan participants." *Cunningham,* 716 F.2d at 1462. Private parties are not proper representatives of this interest of the Secretary. *Id.* at 1462–63. Thus, the Secretary has a separate interest in seeking injunctive relief. Today, the majority endorses a novel and unprecedented

---

**11.** Further, even if one were to assume that the interests of the Secretary and the class plaintiffs were the same, which clearly they are not, under these circumstances where the Secretary did not participate in structuring the settlement agreement it is impossible to conclude that the private plaintiffs had adequately represented the Secretary's interests in enforcing the ERISA pro-

visions so that the doctrine of *res judicata* would bar the Secretary's separate action. *See Southwest Airlines Co.,* 546 F.2d at 102 (stating that "[e]ven though [plaintiffs] were not parties to that action ... their interests were sufficiently represented ..." by the parties in the previous action.).

theory of law that the plaintiffs and defendants may reach a settlement of an ERISA action based upon a condition requiring the dismissal of the Secretary's action where the Secretary has had absolutely no knowledge of, much less consented to, the negotiations leading to this stipulation.[12]

## III

The majority also clearly errs in approving the district court's certification of the class as "consisting of all persons on whose behalf a contribution has been made or was required to be made to the Central States Southeast and Southwest Areas Pension Fund." This class included the entire membership of the Teamsters Union, consisting of approximately 20,000 benefit claimants and over 400,000 asset mismanagement claimants. While I recognize that the certification of a class is within the sound discretion of the trial court and is reversible only if the court abuses its discretion, *see, e.g., Liberles v. County of Cook,* 709 F.2d 1122, 1126 (7th Cir.1983); *Simer v. Rios,* 661 F.2d 655, 668 (7th Cir. 1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982), I must agree with the Secretary of Labor that the named plaintiffs did not properly represent the putative class and thus the court abused its discretion in certifying the class.

Fed.R.Civ.P. 23(a) sets forth the requirements for certification of a class action and provides, in part, that:

"One or more members of a class may sue or be sued as representatives on behalf of all only if ... (4) the representative parties would *fairly and adequately* protect the interests of the class." (Emphasis added). Whether the named plaintiffs properly represent the class' interest depends upon two factors: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the interest of the absentee members. *See, e.g., Horton v. Goose Creek, Ind. School Dist.,* 690 F.2d 470, 484 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983); *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir.1977). In this case the Secretary of Labor does not challenge the adequacy of plaintiff's counsel. As to the second factor, the law is clear that a single class cannot be fairly and adequately represented by the named plaintiffs if the members of that class have antagonistic or conflicting interests. *Hansberry v. Lee,* 311 U.S. 32, 44–45, 61 S.Ct. 115, 119, 85 L.Ed. 22 (1940); *Swain v. Brinegar,* 517 F.2d 766, 779–780 (7th Cir.1975); *Phillips v. Klassen,* 502 F.2d 362, 366–67 (D.C.Cir.), *cert. denied,* 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974); 7 C. Wright & A. Miller, Federal Practice and Procedure, § 1768 at 638–39 (1972).

In this case, there is a clear conflict of interest between the benefit group and the asset mismanagement group. The asset mismanagement group's interests [13] are ad-

---

**12.** The district court also clearly erred when it held that the Secretary was estopped to deny privity under the doctrine of preclusion against inconsistent positions. The district court's Findings of Fact and Conclusions of Law slip op. at 22 (August 27, 1984). Under this doctrine, a party may be precluded from advocating a position which is inconsistent with the position taken with the respect to the same facts in prior litigation. *See Himel v. Continental of Illinois v. Nat'l Bank & Trust Co.,* 596 F.2d 205, 210 (7th Cir.1979). Apparently, the district court felt that since the Secretary of Labor earlier argued that he "shared a community of interest" with the private plaintiffs for purposes of discovery of financial information from the CSPF, he could not now claim the privity did not exist. In an earlier order the district court noted and found that the interests of the Secretary may

not be the same as those of the plan participants in every situation. *See Donovan v. Fitzsimmons,* 90 F.R.D. 583, 586–87 (N.D.Ill.1981). Further, the district court noted that the interest of the Secretary and the beneficiaries were similar with respect to their need for discovery of CSPF documents, but that these interests "might somewhat diverge" at a later time. *Id.* Thus it is clear that the district court recognized that within the context of this fact situation the Secretary's interest would not always be the same as those of the private litigants at any given point in the course of this litigation.

**13.** Those union members who are interested only in recovery of funds lost through the negligence of the trustees.

verse to the benefit group's interests [14] since the settlement provides for liberalization of the pension benefit rules that would result in a greater number of members becoming eligible for pension benefits. Thus, for every dollar that is spent by the Teamster's pension fund on benefits for the eligible members of the benefit group, there will be one less dollar available to provide benefits for the asset mismanagement group, which is an obvious conflict of interest. In fact, $140 million of the CSPF's assets were set aside under the terms of the settlement to cover claims made by members who are now eligible for pension under the new rules.

As to the conflict between those members of the class who favor liberalization of the pension benefit rules (the benefit claimants) and those members who may be opposed to any liberalization of the rules (the asset mismanagement claimants), the district court found that the named plaintiffs and the CSPF's negotiated at arms length and that they vigorously contested each other's position such that: "The present trustees of the Fund [the defendant CSPF] have vigorously represented the interests of those class members who desire that there be but limited expansion of benefit eligibility." I seriously question whether a defendant can ever adequately represent the interests of the unnamed plaintiffs in a class action. However, courts have held, on rare occasions, that the unnamed class plaintiffs, whose interests were antagonistic to other members of the class, were adequately represented by defendants in a class action. *See Horton,* 690 F.2d at 487 (noting, however, that "[i]n many cases, we would hesitate to rely on the opponent of the class to represent the views of dissenting class members"); *Dierks v. Thompson,* 414 F.2d 453, 457 (1st Cir.1969). In *Dierks* and *Horton* the courts were convinced that the defendants vigorously represented the interests of any possible dissenting class members and thus they held that the defendants had adequately represented the views of the dissenting class members. A

critical distinction between the *Dierks* and *Horton* cases and this case is that the plaintiffs and defendants in this case agreed to settle the litigation while in *Dierks* and *Horton* there was no settlement. Since there was no settlement between the plaintiffs and defendants in the *Dierks* and *Horton* cases, the courts were assured that those unnamed class plaintiffs, whose interests conflicted with the rest of the class, would be adequately represented throughout the entire adversary process. Here, the unnamed plaintiffs and the CSPF settled this action, and since this court and the district court were obviously not privy to their settlement negotiations, I fail to understand how this panel certainly can be convinced that the defendant-CSPF vigorously represented the interests of the asset mismanagement group during the course of those negotiations. Further, the defendant-CSPF is not the typical defendant that would in this case necessarily represent the asset mismanagement group in resisting the liberalization of the pension benefit eligibility rules. The CSPF is represented by trustees (a new board that has replaced the defendant former trustees) who owe a fiduciary duty to represent the interests of the fund. In this case, the trustees had to assess whether the fund rules were in fact unduly restrictive and arbitrary in determining whether the CSPF had in the past denied pension benefits to deserving members of the union. The trustees certainly do not dispute the fact that more members of the union should qualify for pensions since they agreed to settle the action allowing for liberalization of the pension benefit rules. However, the asset mismanagement group has absolutely no interest in adding new participants to the pension plan since these new participants would decrease the amount of pension assets available for future pension disbursements. Thus, the majority is in error clearly when it approves of the district court's reasoning that the interests of the asset mismanagement group may be adequately represented by the defendant-CSPF.

---

**14.** Those union members seeking to liberalize    the pension benefit rules.

Further, the district court stated, as if it was not entirely convinced that the named plaintiffs [15] sought the greatest possible recovery under the circumstances for the asset mismanagement claims, that "[t]he Department of Labor in this case has vigorously represented the interests of those class members interested in a larger asset management recovery." It is difficult for me to understand how the Secretary could be an effective advocate, in the contexts of the *Dutchak* and *Sullivan* settlement, for a larger asset mismanagement recovery when considering that the Secretary took no part in the negotiations concerning the asset mismanagement recovery. As stated in the district court's decision, there were no negotiations "between the DOL and the insurance companies...." District Court Opinion, August 27, 1984, slip op. at 7–8. Further, as noted throughout this opinion, the Secretary has a broad public role in enforcing the ERISA statutes that transcends the interests of any one group of participants or beneficiaries. Thus, it is clear that the Secretary cannot be a representative of the class for either purposes of res judicata or class certification.

### IV

As the facts and circumstances in this case demonstrate, the Secretary of Labor of the United States is clearly entrusted with the duty, obligation and responsibility in representing the public interest in the enforcement of the ERISA statutes and thus is not in privity with the private litigants for purposes of the application of the doctrine of *res judicata*. The dire consequences the appellees forecast concerning the cost of litigating this case if it is remanded back to the district court are, at best, a red herring and greatly overstated. The plaintiffs and defendants structured the settlement to include both the benefit and asset mismanagement claims; however, if this case were remanded to the district court I am unaware of any obstacle preventing the parties from settling the benefit claims of the private litigants as the

Secretary merely seeks to pursue and resolve the asset mismanagement claims in order that he might facilitate and aid the recovery of losses by collecting damages from the personal assets of the former trustees. I respectfully dissent.

15. Seven of the eight unnamed plaintiffs in the *Sullivan* action were benefit claimants only.